IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                        No. 23-CR-0748-KWR-1

SOLOMON PEÑA,

    Defendant.

**DEFENDANT'S OBJECTIONS TO THE GOVERNMENT'S LAST-MINUTE JURY-INSTRUCTION MODIFICATIONS**

Defendant Solomon Peña *strenuously* objects to the latter two[1] of the four new jury-instruction modifications requested in the United States' Sealed Response to Court's Third Jury Instructions (Dkt. No. 354) (filed Mar. 17, 2025 @ 6:58 p.m.) ("Last-Minute Modifications").

**I.    The insertion of a totally new and exotic (having no Tenth Circuit pattern) theory of liability on the (literal) eve of trial violates Rule 30, Due Process, and the Court's orders on jury instructions; it materially prejudices Mr. Peña, who has had no opportunity to develop evidence on the new theory and now has little opportunity to research and argue the law; and it creates disruption to other, already-settled instructions.**

The Government wants to pursue a theory of liability under subsection (b) — versus the much-more-frequently-used subsection (a) — of 18 U.S.C. § 2, despite not having breathed a word of this theory at any point in this case prior to ~13 hours before the Court will instruct the jury and the parties will deliver their closing arguments. This is totally unacceptable.

---

[1] Mr. Peña does not have a problem with **(1)** the removal of the words "special" and "primary" in the § 245-elements instructions; or **(2)** the addition of the "mixed election" language to that same element of those same instructions. *See* Last-Minute Modifications at 2-3.

First, the Government wants to add "6, 7, 8, and 9" to the list of counts in the 'main' aiding-and-abetting instruction on page 29 of the Third Sealed Court Proposed Instructions (Dkt. No. 347) (filed Mar. 5, 2025) ("Court's Instructions"). The reason those counts are not included in that instruction is that they already have *their own* dedicated aiding-and-abetting instructions, found on pages 36 (Counts 6-8) and 41 (Count 9) of the Court's Instructions. Counts 6-9 are § 924(c) charges, and aiding and abetting a § 924(c) violation has its own special Tenth Circuit pattern instruction. *See* Tenth Cir. Pattern Crim. Instr. No. 2.45.2 & 2.45.3. The Government apparently just wants overlapping-and-duplicative-but-also-contradictory instructions on those counts, or maybe it just didn't want to take the time to sort out the issue (*i.e.*, how does a § 2(b) theory apply to § 924(c)? a § 924(c) machinegun count?). This issue is listed first because it's the first problem one comes across when reading the Government's request, but it's frankly the least of the requested instruction's problems.

Second, speaking of the Tenth Circuit pattern instructions, there is no Tenth Circuit pattern instruction on 18 U.S.C. § 2(b) liability, and those circuits that do have pattern instructions vary *wildly* in their language, *see* 3d Cir. Model Crim. Instr. Nos. 7.05 & 5.05; 6th Cir. Pattern Crim. Instr. No. 4.01A; 7th Cir. Pattern Crim. Instr. No. 5.06; 8th Cir. Pattern Crim. Instr. No. 5.02 & 7.02; 9th Cir. Pattern Crim. Instr. No. 4.2; 11th Cir. Pattern Crim. Instr. No. S7, which appears to reflect a fundamental but largely unexamined split in how courts conceptualize this little-used basis for liability,[2] *see*, *e.g.*, *Justice Manual* §§ 2476-2483 (discussing in detail arcane aspects of aiding-and-abetting liability under § 2(a), but not discussing § 2(b) liability at all). Which circuit's

---

[2] Many courts, including the Second Circuit, appear to view § 2(b) as intended mostly to cover situations where the 'causer'-defendant lacks the capacity to commit the crime in question himself, *e.g.*, if a statute imposes duties/liability only on banks, a bank employee can still be found guilty under § 2(b) of causing the bank's violation. *See generally* Andrew White, *The Scope of Accomplice Liability Under 18 U.S.C. 2(b)*, 31 Case W. L. Rev. 386 (1981).

pattern instruction did the Government opt for?  Apparently… none of the above, electing to fashion its own bespoke instruction that it has merged into the § 2(a) instruction.

Third, instructing on § 2(b) will require the Court to also instruct, at a minimum, on the definition of "willfulness," *see* 18 U.S.C. § 2(b) ("Whoever willfully causes an act to be done . . . ."); 3d Cir. Model Crim. Instr. No. 7.05 ("When the trial court instructs on causing the criminal acts of another under 18 U.S.C. § 2(b), the court should also define "willfully" . . . ."), which *also* does not have a Tenth Circuit pattern instruction — although it does have a non-instruction-containing "comment" going on at length about how complicated this question is, *see* Tenth Cir. Pattern Crim. Instr. No. 1.38 ("The Committee does not recommend any general instruction defining the term 'willfully' because no single instruction can accurately encompass the different meanings this term has in federal criminal law.  This term is 'a word of many meanings, its construction often being influenced by its context.'"  (one set of quotation marks omitted)).  The Government proposes no such instruction.

Fourth, this late-stage addition of a new theory may constitute a constructive amendment of, or material variance from, the indictment.  Although 18 U.S.C. § 2 does not usually have to be charged to be instructed upon (it's considered a theory of liability, not an independent crime), the Tenth Circuit has expressed caution about the unindicted inclusion of § 2(b) liability in a case, suggesting that some explicit notice must be given — possibly in the charging instrument itself, if only through the inclusion of factual allegations specifically supporting the theory.  *See United States. v. Montoya*, 716 F.2d 1340, 1343 n.1 (10th Cir. 1983) ("In the instant case, the indictment did not charge Montoya with a violation of § 2(b).  However, as in *Catena*, 'this omission is not fatal,' since the indictment against Montoya provided sufficient notice of the criminal violation by incorporating the phrase, 'presented and caused to be presented to the United States Department

3

of Energy a claim against the United States which he knew to be fraudulent.'" (citations omitted)). It should also be noted that, unlike in the cases holding that an indictment that is *silent* about 18 U.S.C. § 2 nonetheless implicitly incorporates it, the Superseding Indictment (Dkt. No. 147) (filed Mar. 26, 2024), here specifically states that it is alleging an "Aiding and Abetting" theory — which certainly suggests that it's not pursuing a § 2(b) theory (which goes by a number of colloquial names (some unique to § 2(b), others not), including "causing," "acting through another," "agency," and "accomplice" liability). *See* Superseding Indictment at 1 (caption).

Fifth, the ultra-late inclusion of this theory constitutes "unfair surprise," *see*, *e.g.*, *United States v. Neal*, 951 F.2d 630, 633 (5th Cir. 1992) (noting that it can be "an abuse of discretion to give [even the much more common and expected] aiding and abetting instruction" if there is a "showing of unfair surprise"), and violates Rule 30 and the Court's orders on the presentation and iterative refinement of proposed jury instructions, *see* Fed. R. Crim. P. 30(a) ("The request must be made at the close of the evidence *or at any earlier time that the court reasonably sets*." (emphasis added)); *United States v. Gaskins*, 849 F.2d 454 (9th Cir. 1988) (reversing convictions where the district court gave an aiding-and-abetting instruction after earlier indicating that it would not, and where the defendant was not given a fair opportunity to argue against the theory). The addition is massively prejudicial both because Mr. Peña has not had the opportunity to develop evidence on this theory and because he now has little opportunity to research and argue the law — for example, Mr. Peña would rather be preparing his closing argument at this moment than responding to these Last-Minute Modifications.

Sixth, and similar to the first point (that being the unintended consequences that the shoehorning of this theory in at the last second has on the rest of the instructions as a whole), Mr. Peña has earlier requested a special verdict form and/or unanimity instruction in order to keep

4

straight the various arcane inchoate- and vicarious-liability theories (conspiracy, *Pinkerton*, aiding and abetting, and now § 2(b)) being pursued by the Government. *See* Def's Objs. to USA's Prop. Jury Instructions, No. 5, at 17 & nn.4-5 (Dkt. No. 336) (filed Feb. 10, 2025). This issue has largely dropped out of the case after the Court ruled against Mr. Peña and the parties continued to go through what is supposed to be an iteratively issue-narrowing process of back-and-forth Court-proposed instructions and objections thereto. But the Government's requested instruction reignites this debate in a real way. *See Gaskins*, 849 F.2d 454, 460 (9th Cir. 1988) ("[W]e do not reach the question whether a special unanimity instruction [vis-à-vis the aiding-and-abetting theory] was required in this case.").

For these reasons and doubtless others — this request really is throwing a hand grenade into the machinery at this point — the Court should deny the Government's requested addition of § 2(b) language. The Government is really supposed to decide upon its theories of guilt before trial, not after it.

II. **The Government's requested removal of the solicitees named in the indictment would constitute a constructive amendment, or at least a material variance.**

The Government "proposes the removal of 'to-wit: Rod White' and 'to-wit: Jeffrey Chavez' because the defendant did not intend that those witnesses would do the killings themselves." Last-Minute Modifications at 7. This is not acceptable because those specific individuals are named (with numbered pseudonyms) in the Superseding Indictment. *Cf. United States v. Keller*, 916 F.2d 628 (11th Cir. 1990) (holding that the trial court committed reversible error by instructing jury that a defendant could be convicted of conspiracy with anyone, and not just party named in indictment, as this constituted a constructive amendment of the indictment). Removing all references to who is being solicited would allow the jury to potentially convict based upon 'ambient' solicitation in the jail — the conclusion that he didn't solicit any one "[]other

5

person" particularly seriously, but he solicited a whole lot of (unknown) people non-seriously, and that's pretty serious in the aggregate — and that possibility constitutes prejudice to Mr. Peña, thus warranting reversal (or, at this stage, outright refusal of the modification to the instruction) even if the change is viewed as merely a variance, rather than a constructive amendment.

## CONCLUSION

The Court should deny the last two of the Last-Minute Modifications. This is really not the time for the introduction of new, major game-changing theories of the case.

Respectfully submitted,

HARRISON & HART, LLC

By: _____
Carter B. Harrison IV
Nicholas T. Hart
924 Park Avenue SW, Suite E
Albuquerque, NM 87102
Tel: (505) 295-3261
Fax: (505) 341-9340
Email: carter@harrisonhartlaw.com

*Counsel for Defendant Solomon Peña*

**This Filing Has No Exhibits**

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of March 2025, I filed the foregoing Response & Objections electronically via the Court's CM/ECF filing system, causing a copy of it to be served on all counsel of record.

HARRISON & HART, LLC

By:  */s/ Carter B. Harrison IV*
Carter B. Harrison IV